917 So.2d 434 (2004)
Nathaniel DOWL, Jr., Individually and as Administrator of the Succession of Nathaniel Dowl, Sr.
v.
REDI CARE HOME HEALTH ASSOCIATION d/b/a Redi Care/Primary Medical Group and the XYZ Insurance Company.
Nathaniel Dowl, Jr.
v.
Scottsdale Insurance Company and Louisiana Patients' Compensation Fund.
Nos. 2004-CA-1182, 2004-CA-1183.
Court of Appeal of Louisiana, Fourth Circuit.
December 22, 2004.
Opinion Vacating Dismissal Order on Rehearing April 6, 2005.
Writ Denied November 28, 2005.
*436 Nathaniel Dowl, Jr., New Orleans, LA, in Proper Person, Plaintiff/Appellant.
Ernest L. O'Bannon, David E. Walle, Christopher M. G'sell, Bienvenu, Foster, Ryan & O'Bannon, New Orleans, LA, for Scottsdale Insurance Company.
James C. Young, Heather M. Valliant, Corinne A. Morrison, Chaffe, McCall, Phillips, Toler & Sarpy, L.L.P., New Orleans, LA, for the Louisiana Patient's Compensation Fund and the Louisiana Patient's Compensation Fund Oversight Board.
Court composed of Judge TERRI F. LOVE, Judge MAX N. TOBIAS Jr., Judge LEON A. CANNIZZARO Jr.
TERRI F. LOVE, Judge.
This appeal is from a hearing held on April 16, 2004 and judgment rendered on May 17, 2004. On May 20, 2004, Nathaniel Dowl Jr., appellant, filed and was granted an order for devolutive appeal. However, on April 23, 2004, Mr. Dowl filed a motion styled, "Motion to Reopen Testimony," which the trial court re-designated as a motion for new trial and set the matter for hearing on June 18, 2004. LSA-C.C.P. Art. 2087(D) states:
An order of appeal is premature if granted before the court disposes of all timely filed motions for new trial or judgment notwithstanding the verdict. The order becomes effective upon the denial of such motion.
On May 20, 2004, when the trial court granted the order for devolutive appeal, the appeal was premature, because of the outstanding Motion for New Trial.[1] This court issued an order to appellant, to show why the appeal should not be dismissed as premature and no evidence was presented by appellant. The record is devoid of any evidence of the trial court's disposition on the Motion for New Trial. Therefore, we dismiss this appeal as premature.
DISMISSED.
CANNIZZARO, J., dissents with reasons.
CANNIZZARO, J., dissenting.
I respectfully dissent from the dismissal of this appeal. The trial court judge stated in the transcript of the June 18, 2004 hearing on the motion for new trial that "the Court is going to deny the Motion for New Trial because there has not been any new evidence presented that would suggest otherwise." Therefore, I disagree with the majority that "[t]he record is devoid of any evidence of the trial court's disposition on the Motion for New Trial."
Pursuant to La. C.C.P. art. 2087(D), a premature order of appeal "becomes effective upon the denial of such motion [a motion for a new trial or a judgment notwithstanding the verdict]." Based on La. C.C.P. art. 2087(D), I would not dismiss this appeal.

ON APPLICATION FOR REHEARING
TERRI F. LOVE, Judge.
This litigation arises out of the death of Nathaniel Dowl, Sr. Specifically, this appeal involves whether Redi Care Home Health Association, Scottsdale Insurance Company, and the Louisiana Patient's Compensation Fund remain liable to Nathaniel Dowl, Jr., the decedent's son, for the death of his father, even though the parties executed a previous settlement. The trial court sustained an exception of *437 res judicata. It is from this judgment that Mr. Dowl, Jr. appeals and for the reasons assigned below, we affirm.

FACTS AND PROCEDURAL HISTORY
This matter was originally dismissed on appeal as premature because no written judgment had been signed denying the appellants motion for new trial. Dowl v. Redi Care Home Health Ass'n, XXXX-XXXX (La.App. 4 Cir. 12/22/04), 917 So.2d 434. We now vacate the dismissal and address the appeal on the merits, because a formal judgment denying the trial has been signed and a copy furnished to this court.
Nathaniel Dowl, Sr. died allegedly as a result of negligent home care provided by Redi Care Home Health Association ("Redi Care") and Dr. David Bass ("Dr. Bass"), a Veterans Administration Medical Center ("VA") doctor providing home health care assistance. As a result, Nathaniel Dowl, Jr. ("Mr. Dowl"), decedent's son, filed suit against Redi Care and XYZ Insurance Group alleging negligence. Thereafter, Mr. Dowl discovered that Redi Care sought debtor relief pursuant to the U.S. Bankruptcy Code, which stayed the proceedings against them. Following this discovery, Mr. Dowl amended his petition adding Scottsdale Insurance Company ("Scottsdale"), Redi Care's insurer, as a defendant. Shortly after amending his petition, Mr. Dowl fired his attorney and retained new counsel.
The parties agreed to submit the case to mediation. Mr. Dowl signed a settlement agreement on September 23, 2002. The agreement settled all rights Mr. Dowl possessed against Scottsdale and Redi Care for $100,000.00. He also released all other parties, with the exception of any rights he might have against the VA. The agreement reads, in part:
I do hereby release and forever discharge Redi Care Home Health Association and Scottsdale Insurance Company, their officers, directors, agents, employees, subsidiaries, assignees, successors, adjusters, investigators, attorneys, and any and all other named or unnamed parties or insureds, and all other persons or entities without any limitation whatsoever, excepting the claims reserved hereinafter against the Department of Veterans Affairs....
Immediately following the settlement, Mr. Dowl fired his counsel. Accordingly, Silvestri & Massicot ("Silvestri") intervened to ensure payment of their fees. Additionally, Silvestri filed a Final Motion and Order of Dismissal requesting dismissal of Mr. Dowl's claims due to settlement, and dismissal of their claim as an intervenor. The trial judge granted the motion and dismissed all claims with prejudice.
Almost two years after the dismissal, Mr. Dowl, pro se and with in forma pauperis status, filed another petition seeking judicial approval of the original settlement and additional payments from Scottsdale and the Louisiana Patient's Compensation Fund ("PCF") for negligently causing the death of his father. He later amended his petition, adding Dr. Bass, the treating physician from the VA, as a defendant. Scottsdale then filed exceptions including the peremptory exception of res judicata. The second action was transferred and consolidated with the original action.
At the April 4, 2004 hearing on the exceptions, the trial judge determined that the case did not involve a qualified health care provider and therefore, Mr. Dowl never possessed any claims against the PCF. Further, the trial court opined that federal court retained jurisdiction over the claim against Dr. Bass. In addition, the trial court reasoned that the settlement did not require judicial approval because there is no requirement that the court approve a settlement between "two adults *438 involved in a lawsuit." The judge also revoked Mr. Dowl's in forma pauperis status due to his $100,000.00 settlement. The trial court granted Scottsdale's exception of res judicata, and declared the remaining exception moot.
After the April hearing, but prior to the signing of the judgment, Mr. Dowl filed a motion to reopen testimony on April 23, 2004, which the court treated as a Motion for a New Trial. Mr. Dowl also filed a Motion to Annul the Judgment from the April hearing, but the trial judge denied it because it was improper to be handled as a summary proceeding. La C.C.P. art. 2592. Prior to the June hearing on the Motion for New Trial, the judge also granted Mr. Dowl's Motion for Devolutive Appeal on May 20, 2004. On June 18, 2004, the trial judge denied the Motion for New Trial because Mr. Dowl failed to present any new evidence or show that the previous judgment was contrary to the law or evidence. The motion and order for appeal were premature, but according to La. C.C.P. Art. 2087(D)[1] the signing of the judgment denying a new trial, contained in the record from the June hearing, corrected this defect. Mr. Dowl's appeal is now perfected and follows.

ASSIGNMENTS OF ERROR
Mr. Dowl alleges many assignments of error, but they can be consolidated into three assertions. He alleges the trial court erred by: 1) finding that the second suit against Scottsdale is barred by res judicata; 2) refusing to grant him a new trial; and 3) rescinding his in forma pauperis status.

ASSIGNMENT OF ERROR # 1
First, we address the issue of res judicata. The trial court dismissed Mr. Dowl's claims against Scottsdale because of the settlement agreement. Mr. Dowl signed regarding the death of his father. We review the dismissal as to res judicata under the de novo standard because the exception raises a question of law. State ex rel. Department of Social Services v. Baha Towers Ltd. Partnership, XXXX-XXXX, p. 3 (La.App. 4 Cir. 12/1/04), 891 So.2d 18, 20.
The doctrine of res judicata, contained in La. C.C.P. Art. 425,[2] requires Mr. Dowl to bring all actions against certain parties for the negligent death of his father in one suit. Thus, Louisiana law provides that a final judgment that favors the plaintiff is conclusive as to "all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation." LSA-R.S. 13:4231(1).[3] Although Mr. Dowl's case presents no final judgment as *439 to his negligence claims regarding his father's death, except for the dismissal with prejudice, the settlement agreement has the same preclusive effect as a judgment, pursuant to La. C.C. Art. 3078.[4]
However, there are three exceptions to the preclusive effect of res judicata. These exceptions are:
(1) When exceptional circumstances justify relief from the res judicata effect of the judgment;
(2) When the judgment dismissed the first action without prejudice; or,
(3) When the judgment reserved the right of the plaintiff to bring another action.
LSA-R.S. 13:4232(A). However, none of the exceptions are applicable to this case. There are no exceptional circumstances. Mr. Dowl was adequately represented by counsel while negotiating the settlement. Additionally, the trial judge dismissed Mr. Dowl's first case, with prejudice, upon the signing of the settlement. Last, the settlement only reserved Mr. Dowl's possible rights against the VA.
The Louisiana Supreme Court has held that a compromise or settlement can form the basis of a res judicata claim. Ortego v. State, Department of Transportation. and Development, 96-1322 p. 7 (La.2/25/97), 689 So.2d 1358, 1364. However, when applying res judicata to the settlement the Court stated the claiming party "must have been a party to the compromise, and the authority of the thing adjudged extends only to the matters those parties intended to settle." Id. at p. 7, 689 So.2d at 1363. Likewise, Mr. Dowl's settlement released Scottsdale and all other parties from future liability, with the exception of rights reserved against the VA. This intent is clear and explicit in the settlement. Again, the settlement reads, in part:
I do hereby release and forever discharge Redi Care Home Health Association and Scottsdale Insurance Company, their officers, directors, agents, employees, subsidiaries, assignees, successors, adjusters, investigators, attorneys, and any and all other named or unnamed parties or insureds, and all other persons or entities without any limitation whatsoever, excepting the claims reserved hereinafter against the Department of Veterans Affairs....
Mr. Dowl signed this agreement, while represented by counsel, to settle his claims regarding his father's death. He intentionally reserved his possible rights against the VA. Additionally, Scottsdale was a party to the agreement. The second suit is an attempt to acquire additional settlement money all arising from the same "transaction or occurrence" as outlined in LSA-R.S. 13:4231.
Thus, Mr. Dowl's second suit against Scottsdale is barred by the doctrine of res *440 judicata. We, therefore, affirm the decision of the trial court.

ASSIGNMENT OF ERROR # 2
Next, Mr. Dowl alleges the trial court erred by denying him a new trial against the PCF and Dr. Bass, as well as for seeking court approval of the original settlement. Pursuant to La. C.C.P. Art. 1973,[5] a trial court has wide discretion when deciding to grant a new trial. Specifically, La. C.C.P. Art. 1972 provides for three instances when a new trial shall be granted. The two circumstances possibly applicable to this case are:
1) When the verdict or judgment appears clearly contrary to the law and the evidence.
2) When the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial.
La. C.C.P. Art. 1972. Although, the trial court has this discretion, we must review the denial within the abuse of discretion standard. West v. National Railroad Passenger Corporation, XXXX-XXXX, p. 6 (La.App. 4 Cir. 6/23/04), 879 So.2d 327, 332. Thus, we must determine if the trial court abused its discretion by finding that the original judgment was not contrary to the law or that there was no new evidence.
First, Mr. Dowl asserts rights against the PCF for the death of his father. However, in order for a health care provider to be covered by the PCF, the health care provider must be qualified under the Louisiana Medical Malpractice Act ("LMMA"), according to LSA-R.S. 40:1299.42. To become qualified the provider must:
(1) Cause to be filed with the board proof of financial responsibility as provided by Subsection E of this Section.
(2) Pay the surcharge assessed by this Part on all health care providers according to R.S. 40:1299.44.
(3) For self-insureds, qualification shall be effective upon acceptance of proof of financial responsibility by and payment of the surcharge to the board. Qualification shall be effective for all others at the time the malpractice insurer accepts payment of the surcharge.
LSA-R.S. 40:1299.42(A). Redi Care, the health care provider insured by Scottsdale, is not a qualified health care provider under the LMMA because it has not complied with the requirements to become qualified. Additionally, the VA does not qualify as a qualified health care provider under the LMMA. Johns v. Agrawal, 99-0499, 99-0500, p. 7 (La.App. 4 Cir. 11/17/99), 748 So.2d 514, 519. Therefore, Mr. Dowl does not have a proper claim against the PCF.
Next, Mr. Dowl alleges the trial court should have granted him a new trial on the basis of his rights against Dr. Bass, his father's attending physician from the VA. The trial court determined there was no evidence to require a new trial on this matter because, as a state court, it did not have jurisdiction over the claim against Dr. Bass.
According to the Federal Tort Claims Act, all claims against the VA or a physician working for the VA must be brought against the United States. 28 U.S.C. §§ 1346(b) and 2672.[6] Additionally, 38 *441 U.S.C. § 7316(c)[7] outlines the procedure requiring a suit against the VA to be filed *442 in federal court. This Court has also recognized this requirement. Johns, p. 2, 748 So.2d at 516. We stated that the plaintiff's only cause of action against the VA was a claim "under the Federal Tort Claims Act in federal court." Id. (citation omitted). Accordingly, the trial court did not abuse its discretion in refusing to grant a new trial on this issue because it did not have jurisdiction over Mr. Dowl's claim against Dr. Bass.
Finally, Mr. Dowl seeks judicial approval of his original settlement. Mr. Dowl asserts he is entitled to an unopposed court approval of the settlement because of an alleged untimely filing by the PCF. However, Mr. Dowl misinterprets the law. The statute he cites, LSA-R.S. 40:1299.44(C)(3)[8], does not apply to the instant case. The statute provides that a party may object to a proposed settlement within twenty days of filing the petition. The statute is not applicable. The case sub judice does not involve the PCF or a settlement under the LMMA because there is no qualified health care provider made a party defendant on this case.
Accordingly, Mr. Dowl is essentially seeking court approval of a settlement between capable adults represented by counsel. Louisiana law does not provide an unfettered right to this approval. As such, it was not an abuse of discretion to deny a new trial on this issue.
We affirm the trial court's decision to deny Mr. Dowl's motion for a new trial.

ASSIGNMENT OF ERROR # 3
Lastly, Mr. Dowl claims the trial court erred in rescinding his in forma pauperis status. The trial court has great discretion when deciding to revoke pauper status. Ainsworth v. Ainsworth, XXXX-XXXX, p. 2 (La.App. 4 Cir. 10/22/03), 860 So.2d 104, 108. Accordingly, on appeal, a revocation of pauper status is reviewed according to the abuse of discretion standard. Id. at p. 4, 860 So.2d at 109.
Even though Mr. Dowl initially began the appeal with in forma pauperis status, the trial court revoked his status on the motion of the PCF. The trial judge granted the revocation because of the $100,000.00 settlement Mr. Dowl received, which he did not disclose when applying for in forma pauperis status. Mr. Dowl asserts that his status should not be revoked because he did not receive the entire $100,000, as $7,000 of the settlement went to the Department of Veteran's Affairs as a release of liens. Mr. Dowl also acknowledged paying his first attorney $7,000 in fees. Assuming Mr. Dowl paid his attorney from the settlement, $86,000 of the settlement remained.
This court previously upheld a revocation of pauper status where plaintiff was entitled to receive less money than Mr. Dowl. See Ainsworth at p. 4, 860 So.2d at 109. Accordingly, we do not find the trial court abused its discretion because Mr. Dowl does not appear destitute such that proceeding in forma pauperis is warranted. As such, we affirm the decision of the trial court.

*443 CONCLUSION
For the foregoing reasons, we affirm the decisions of the trial court.
DISMISSAL ORDER VACATED; AFFIRMED.
NOTES
[1] A Motion for New Trial is a final judgment, and as a final judgment it must be signed by the judge ruling on it; pursuant to LSA-C.C.P. art. 1911. "No appeal may be taken from a final judgment until this requirement has been fulfilled." LSA-C.C.P. art. 1911.
[1] La. C.C.P. Art. 2087(D): Delay for taking devolutive appeal

D. An order of appeal is premature if granted before the court disposes of all timely filed motions for new trial or judgment notwithstanding the verdict. The order becomes effective upon the denial of such motions.
[2] La. C.C.P. Art. 425: Preclusion by judgment

A. A party shall assert all causes of action arising out of the transaction or occurrence that is the subject matter of the litigation.
B. Paragraph A of this Article shall not apply to an action for divorce under Civil Code Article 102 or 103, an action for determination of incidental matters under Civil Code Article 105, an action for contributions to a spouse's education or training under Civil Code Article 121, and an action for partition of community property and settlement of claims between spouses under R.S. 9:2801.
[3] LSA-R.S. 13:4231: Res judicata

Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
(1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
(2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
(3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.
[4] La. C.C. Art. 3078: Res judicata; error; lesion

Transactions have, between the interested parties, a force equal to the authority of things adjudged. They can not be attacked on account of any error in law or any lesion. But an error in calculation may always be corrected.
[5] La. C.C.P. Art. 1973: Discretionary grounds

A new trial may be granted in any case if there is good ground therefore, except as otherwise provided by the law.
[6] 28 U.S.C. § 1346(b)(1). United States as defendant

(b)(1) Subject to the provisions of chapter 171 of this title, the district courts, together with the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.
28 U.S.C. § 2672: Administrative adjustment of claims
The head of each Federal agency or his designee, in accordance with regulations prescribed by the Attorney General, may consider, ascertain, adjust, determine, compromise, and settle any claim for money damages against the United States for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the agency while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred: Provided, That any award, compromise, or settlement in excess of $25,000 shall be effected only with the prior written approval of the Attorney General or his designee. Notwithstanding the proviso contained in the preceding sentence, any award, compromise, or settlement may be effected without the prior written approval of the Attorney General or his or her designee, to the extent that the Attorney General delegates to the head of the agency the authority to make such award, compromise, or settlement. Such delegations may not exceed the authority delegated by the Attorney General to the United States attorneys to settle claims for money damages against the United States. Each Federal agency may use arbitration, or other alternative means of dispute resolution under the provisions of subchapter IV of chapter 5 of title 5, to settle any tort claim against the United States, to the extent of the agency's authority to award, compromise, or settle such claim without the prior written approval of the Attorney General or his or her designee.
Subject to the provisions of this title relating to civil actions on tort claims against the United States, any such award, compromise, settlement, or determination shall be final and conclusive on all officers of the Government, except when procured by means of fraud.
Any award, compromise, or settlement in an amount of $2,500 or less made pursuant to this section shall be paid by the head of the Federal agency concerned out of appropriations available to that agency. Payment of any award, compromise, or settlement in an amount in excess of $2,500 made pursuant to this section or made by the Attorney General in any amount pursuant to section 2677 of this title shall be paid in a manner similar to judgments and compromises in like causes and appropriations or funds available for the payment of such judgments and compromises are hereby made available for the payment of awards, compromises, or settlements under this chapter.
The acceptance by the claimant of any such award, compromise, or settlement shall be final and conclusive on the claimant, and shall constitute a complete release of any claim against the United States and against the employee of the government whose act or omission gave rise to the claim, by reason of the same subject matter.
[7] 38 U.S.C. § 7316(c). Malpractice and negligence suits; defense by the United States

(c) Upon a certification by the Attorney General that the defendant was acting in the scope of such person's employment in or for the Administration at the time of the incident out of which the suit arose, any such civil action or proceeding commenced in a State court shall be removed without bond at any time before trial by the Attorney General to the district court of the United States of the district and division embracing the place wherein it is pending and the proceeding deemed a tort action brought against the United States under the provisions of title 28 and all references thereto. After removal the United States shall have available all defenses to which it would have been entitled if the action had originally been commenced against the United States. Should a United States district court determine on a hearing on a motion to remand held before a trial on the merits that the employee whose act or omission gave rise to the suit was not acting within the scope of such person's office or employment, the case shall be remanded to the State court.
[8] LSA-R.S. 40:1299.44(c)(3): Patient's Compensation Fund

(C)(3) The board and the insurer of the health care provider or the self-insured health care provider as the case may be, may agree to a settlement with the claimant from the patient's compensation fund, or the board and the insurer of the health care provider or the self-insured health care provider as the case may be, may file written objections to the payment of the amount demanded. The agreement or objections to the payment demanded shall be filed within twenty days after the petition is filed.